UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| FRANCES E. NEIDHARDT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 1:15-cv-00088 |
| | ) CHIEF JUDGE CRENSHAW |
| BILLY WAYNE SHOUSE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This action came before the Court for a bench trial on April 18 and 19, 2017, presenting the issue of the proper measure of damages for the negligent cutting of another's trees and conversion. Based on the entire record, the Court finds by a preponderance of the evidence that Frances E. Neidhardt shall recover from Sharon Kay Thomas a/k/a Sharon Knowles, Jack Knowles, and Billy Wayne Shouse a total award of $3,015.60.

In May 2015, the Knowles hired Shouse to cut timber and clear land. (Doc. No. 58 at ¶ 4.) Shouse mistakenly cut and fell thirteen (13) large trees from approximately one (1) acre of land that belonged to Neidhardt. (Id. at ¶ 5.) Neither Shouse nor the Knowles had Neidhardt's permission to enter upon or to cut trees on Neidhardt's property. By doing so, they committed the torts of trespass and conversion. See Burlison v. United States, No. 2:07-cv-02151-JPM-cgc, 2011 WL 1002808, at *8 (W.D. Tenn. Mar. 15, 2011) (quoting Baker v. Moreland, No. 89-62-II, 1989 WL 89758, at *4 (Tenn. Ct. App. Aug. 9, 1989)) ("Under Tennessee law, '[e]very unauthorized entry upon another's realty is a trespass, regardless of the degree of force used or the amount of damage.'"); Shipwash v. United Airlines, Inc., 28 F. Supp. 3d 740, 753 (E.D. Tenn. 2014) (quoting Ralston v. Hobbs, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009)) ("Under Tennessee law,

'[c]onversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property.'").

Neidhardt is entitled to damages. She seeks damages for the value of the 13 trees that Shouse cut down, and damages for trespass. Awarding damages for the value of the trees and for trespass is appropriate in Tennessee. Ellis v. Vic Davis Const., Inc., No. 03S01-9201-CV-00011, 1992 WL 183536, at *2 (Tenn. Aug. 3, 1992).

Tennessee Code Annotated § 43-28-312 governs liability and damages for cutting timber from the property of another and provides:

> (a) (1) Civil liability for the negligent cutting of timber from the property of another is in an amount double that of the current market value of the timber.
>
> (2) If the timber is negligently cut from the property of another because the landowner for whom the timber is being cut has marked or designated the boundary of the landowner's property incorrectly, then the landowner is jointly liable for the double damages.
>
> (b) Civil liability for knowingly and intentionally cutting timber from the property of another is in an amount treble that of the current market value of the timber.
>
> (c) Nothing in this section precludes an owner of property on which timber has been cut by another from recovering damages for loss of value other than commercial timber value, if any, of the timber negligently or intentionally cut.
>
> (d) "Current market value," as used in this section, applies to the property in question that is standing timber; therefore, the current market value is that of the timber before being cut.

Here, Neidhardt voluntarily dismissed her claim for intentional cutting of timber. (Doc. No. 57.) The Court finds that Sharon Knowles instructed Shouse to clear Neidhardt's land because she thought the land belonged to her. Thus, the Court concludes that the cutting of Neidhardt's timber was negligent.

### 1. Trunk Formula Method

Neidhardt relies on the trunk formula method to determine the value of the trees. Certified arborist Dr. Douglas Airhart testified that the trunk formula method is used to value trees that are too large to be replaced by equal-sized nursery trees. Dr. Airhart specifically opined that the value of Neidhardt's real estate was not relevant to his valuation of the trees because her property was not for sale. Similarly, Dr. Airhart opined that it would be inappropriate to award damages based on the market value of the trees because Neidhardt did not want the trees to be harvested for any reason.

Dr. Airhart applied the trunk formula method as set forth in the Guide for Plant Appraisal, 9th Edition from the Council of Tree and Landscape Appraisers (International Society of Arboriculture, 2000) (the "Guide"). He visited Neidhardt's property to verify the location of the cut trees. He relied on a report from a consulting forester that identified the species and diameters of the trees, and appraised the value of the 13 trees at $54,400.

His valuation included the contribution the 13 trees made to the entire property as a part of the location factor in the trunk formula method. He gave the contribution element of the location factor 100 percent weight in his valuation because the area was pristine and undisturbed with a natural mixed population of deciduous trees. Dr. Airhart did not consider the real estate value of Neidhardt entire property or the market value of the trees as timber because neither the real estate nor the trees were for sale.

### 2. Market Value

By contrast, Defendants urge application of the market value—the value of trees as timber before they were cut down—to determine Neidhardt's damages. See Tenn. Code Ann. § 43-28-312(d). Professional forester Dan Sanderson applied the market value. He visited Neidhardt's

property and identified the location of the 13 trees: five yellow poplar, six black walnut, and two hard maple. Mr. Sanderson determined the stump diameter of each tree. In determining the market value of the trees, he estimated their merchantable length—the amount of the tree that that could be used as timber. To estimate the merchantable length of the trees, Mr. Sanderson used tree tops from the cut trees that were still in the area where available, but relied on the stump alone where he could not locate leftover tree tops. According to Mr. Sanderson, the total market value of the 13 trees was $1,457.80.

Consulting forester Jonathan Boggs visited the trespass area and reviewed the reports of Dr. Airhart and Mr. Sanderson, as well as a property appraisal report from L. Wayne Edmonson. Mr. Boggs testified that the market value is the appropriate measure of damages because the property is wood land that Neidhardt was receiving a property tax advantage to maintain as forest or agriculture. Mr. Boggs agreed with Mr. Sanderson's appraisal of the market value of the trees as $1,457.80. As to Dr. Airhart's valuation, Mr. Boggs testified that valuing the trees using the trunk formula method was inappropriate because Neidhardt's land was undeveloped and rural, and Dr. Airhart did not adequately explain how he determined the condition, location, or tree size factors he applied as part of the trunk formula method. However, Mr. Boggs admitted that he had not previously used the Guide and that he did not perform an independent assessment.

3.   **Appropriate Measure of Damages for the Value of the Trees**

The Court rejects the trunk formula method in this case. Although Tennessee Code Annotated § 43-28-312(c) "clearly and unambiguously" permits Neidhardt to present evidence on the trunk formula method, Wood v. Wolfenbarger, No. E2011-01953-COA-R3-CV, 2012 WL 3329525, at *4 (Tenn. Ct. App. Aug. 15, 2012), Dr. Airhart's testimony was not credible. For example, Dr. Airhart testified that he assigned a condition factor to each species of tree based on

an entirely subjective impression of surrounding trees. He did not identify any objective rationale for choosing the condition factor. He also testified that he did not apply any discount factor for the contribution of the 13 trees to the entire property because the trespass area was a pristine and undisturbed natural mixed population of deciduous trees. Again, he did not identify any objective basis for this conclusion. Dr. Airhart's inability to explain any objective rationale for specific element of his analysis makes his expert opinion less persuasive.

The Court will apply the market value. Mr. Sanderson testified credibly and logically that the total market value of the 13 trees was $1,457.80. Neidhardt does not dispute that amount, only that the market value is not the appropriate measure of damages. Mr. Boggs' agreement with Mr. Sanderson's assessment of the market value is also credible to the Court. Thus, the Court concludes that the market value is the appropriate measure of damages. Neidhardt will be awarded double the market value of the 13 trees, or $2,915.60, pursuant to Tennessee Code Annotated § 43-28-312(a)(1).

### E. Damages for Trespass

Neidhardt also seeks damages for trespass in the amount of the remediation cost to return the land to the state it was in prior to the trespass. "A party may recover compensatory damages in a trespass action." Magness v. Couser, No. M2006-00872-COA-R3-CV, 2008 WL 204116, at *8 (Tenn. Ct. App. Jan. 24, 2008) (citing Meighan v. U.S. Sprint Commc'ns Co., 924 S.W.2d 632, 641 (Tenn. 1996)). Where, as here, trespass causes reparable harm to land, "the proper measure of damages [is] the *reasonable* cost of repair, unless such cost is disproportionate to or exceeds the diminution in value or is disproportionate to or exceeds the market value of the affected property." Conaster v. Ball, No. M1999-00583-COA-R3-CV, 2001 WL 873457, at *12 (Tenn. Ct.

App. Aug. 3, 2011) (citing Citizens Real Estate & Loan Co., Inc. v. Mountain States Dev. Corp., 633 S.W.2d 763, 767 (Tenn. Ct. App. 1981)).

Neidhardt presented evidence on the remediation cost from professional landscaper Cliff Jones, who testified that he visited her property. His estimate of the remediation cost to replace the trees, repair the land, remove debris, and spread finishing seed is $22,955.00. (Doc. No. 62 at 3 n.1.)

Defendants argue that Neidhardt should not be awarded any damages for trespass because the remediation cost exceeds and is disproportionate to the diminution in value resulting from the trespass and the market value of the property. (Doc. No. 65 at 5-9.) Defendants presented state-licensed real estate appraiser L. Wayne Edmonson, who testified that he estimated the market value of Neidhardt's land before and after the trees were cut down. Mr. Edmonson explained that he completed his appraisal by researching four land sales near Neidhardt's property, looking at ground and aerial photographs of the property, referencing soil maps provided by the United States Department of Agriculture, and personally visiting the property. According to Mr. Edmonson, the market value of Neidhardt's land was $3,500.00 per acre and $42,770.00 total *before* and *after* the trees were cut down—that is, there was no diminution in value resulting from Defendants' trespass.

The effective date of value for Mr. Edmonson's appraisal was April 29, 2016, after Neidhardt's trees were cut down. Mr. Edmonson did not inspect Neidhardt's property before that date, and he hypothetically appraised the market value of her property before the trees were cut by assuming that twelve to fourteen trees stood in the trespass area. Neidhardt did not present an appraisal to dispute Mr. Edmonson's determination that the market value of her land did not change after removal of the 13 trees. The Court accepts that Mr. Edmonson's testimony on the diminution in value.

Neidhardt does, however, argue that the Court may consider remediation cost as an alternative measure of the diminution in value resulting from Defendants' trespass. (Doc. No. 62 at 3-4 (citing Conaster, 2001 WL 873457, at *9 (quoting 75 Am. Jur. 2d, Trespass § 137 (1991).) In Conaster, the Tennessee Court of Appeals held that, where a plaintiff presents evidence on the remediation cost, the burden is on the defendant to show that the remediation cost is unreasonable compared to the diminution in value. 2001 WL 873457, at *12 (citing Nutzell v. Godwin, 1989 WL 76306, at **1-2 (Tenn. Ct. App. July 13, 1989)). Here, Neidhardt offered evidence that the remediation cost was $22,955.00, and did not offer evidence on the diminution in value. Defendants offered credible evidence that the diminution in value resulting from Defendants' trespass was zero. Because the Defendants have carried their burden of demonstrating that the remediation cost exceeds the diminution in value, the Court will not award "the reasonable cost of repair" as damages for Defendants' trespass. Id.

However, "[n]ominal damages are always available in a trespass action." Burlison, 2011 WL 1002808, at *8 (citing Jackson v. Bownas, No. E2004-01893-COA-R3-CV, 2005 WL 1457752, at *8 (Tenn. Ct. App. June 21, 2005)). The Court finds that Neidhardt is entitled to an award of $100.00 in nominal damages for Defendants' trespass. See 94th Aero Squadron of Memphis, Inc. v. Memphis-Shelby Cty. Airport Auth., 169 S.W.3d 627, 642 (Tenn. Ct. App. 2004) (modifying the trial court's judgment to award $100.00 in nominal damages); Floyd v. Tesar, No. E2004-00025-COA-R3-CV, 2004 WL 1159566, at **1-2 (Tenn. Ct. App. May 25, 2004) (affirming the trial court's award of $100.00 in nominal damages).

In conclusion, Neidhardt shall recover from Defendants a total award of $3,015.60—$2,915.60 for the value of the trees under Tenn. Code Ann. § 43-28-312(a)(1), and $100.00 in nominal damages for trespassing on her land. The Court does not doubt the testimony of Frances

7

Neidhardt and her daughter that they have a sincere love of and fond family memories from their family land on which Defendants trespassed and negligently removed trees, but the proof presented does not establish by a preponderance of the evidence that a greater award of damages would be appropriate.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE